IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELILAH EVANS,<br><br>        Plaintiff,<br><br>    vs.<br><br>JO ANNE BARNART,<br>Commissioner of Social Security,<br><br>        Defendant.<br>_____/ | CASE NO. CV-F-03-6753-LJO<br><br>**MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION (Doc. 16)** |

      Plaintiff Delilah Evans ("claimant") seeks judicial review of an administrative decision denying her claim for disability benefits under the Social Security Act, ("Act"). Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties consented to proceed before a United States Magistrate Judge, and by an April 19, 2004 order, this action was assigned to United States Magistrate Judge Lawrence J. O'Neill for all further proceedings. Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").

      Claimant filed her complaint on December 5, 2003 and her opening brief on November 15, 2004. The Commissioner filed her opposition to the appeal on February 10, 2005. Claimant filed her reply brief on February 24, 2005.

# BACKGROUND

## Administrative Proceedings

On October 3, 2000 and September 26, 2000, claimant applied for disability insurance benefits and supplemental security income benefits based on disability alleging disability onset of February 15, 1998, due to asthma, hypertension, diabetes, mellitus, back pain, post traumatic stress disorder and anxiety. (Administrative Record ("AR") 18, 379-82.) Claimant had been receiving disability insurance benefits which terminated in 1995. (AR 77, 82.) Her claims were denied initially and upon reconsideration. Claimant's application was further denied by an Administrative Law Judge ("ALJ") in a decision issued on August 30, 2002. (AR 14-24.) On October 24, 2002, the Appeals Council denied review. (AR 7-9.) Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

## Claimant's Background and Work Experience

Claimant was born on December 22, 1952. (AR 54.) She graduated from high school. (AR 54.) She does not have any past relevant work.

## Medical History

The medical history is not in dispute in this appeal.

## ALJ Findings

In his August 30, 2002 decision, the ALJ characterized the "primary issue" before him as whether claimant was disabled. (AR 17.) In determining claimant was not disabled and not eligible for benefits, the ALJ made the following findings (AR 23-24):

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through September 30, 1998.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §404.1520(b) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.  The ALJ finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.  The ALJ has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments. 20 CFR §§404.1527 and 416.927.

7.  The claimant has the following residual functional capacity: to frequently lift and carry ten pounds and occasionally 20 pounds, to stand and walk six hours in an eight-hour workday and to sit about six hours in an eight-hour workday. The claimant can only occasionally climb, stoop and kneel. She must avoid work around smoke, dust and chemical fumes and in temperature extremes. Additionally, the claimant retains the mental residual functional capacity to perform simple, repetitive tasks involving understanding, remembering and carrying out one and two step instructions.

8.  The claimant has no past relevant work experience. 20 CFR §§404.1565 and 416.965.

9.  The claimant is an "younger individual between the ages of 45 and 49." 20 CFR §§404.1563 and 416.963.

10. The claimant has a "high school (or high school equivalent) education." 20 CFR §§404.1564 and 416.964.

11. The claimant has the residual functional capacity to perform substantially all of the full range of light work. 20 CFR §§404.1567 and 416.967.

12. Based on an exertional capacity for light work, and the claimant's age, education, and work experience, Medical-Vocational Rule 202.12, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

13. The claimant's capacity for light work is substantially intact and has not been compromised by any nonexertional limitations. Accordingly, using the above cited rules as a framework for decision-making, the claimant is not disabled.

14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. 20 CFR §§404.1520(f) and 416.920(f).

/////

/////

## DISCUSSION

### Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. *See* 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). Substantial evidence is "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Jones,* 760 F.2d at 995. If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

Claimant argues that the ALJ erred by failing to use a vocational expert at Step Five of the Sequential Evaluation.

### The Sequential Evaluation

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

*Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

To achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation to determine whether a claimant is physically or mentally disabled. 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). If during any point of this review, it is determined that the claimant is not disabled, the claim is not to be considered further. 20 C.F.R. §§ 404.1520(a) and 416.920(a). The five-step process is summarized as follows:

1. Determination of whether the claimant is engaged in substantial gainful activity, and if so engaged, the claimant is not presumed disabled and the analysis ends;

2. If not engaged in substantial gainful activity, determination of whether the claimant has a severe impairment; if the claimant does not, the claimant is not presumed disabled and the analysis ends;

3. If the claimant has a severe impairment, determination of whether any such severe impairment meets any of the impairments listed in the regulations;[1] if the claimant does have such an impairment, the claimant is disabled and the analysis ends;[2]

4. If the claimant's impairment is not listed, determination of whether the impairment prevents the claimant from performing his or her past work;[3] if the impairment does not, the claimant is not presumed disabled and the analysis ends; and

5. If the impairment prevents the claimant from performing his or her

---

[1] *See* 20 C.F.R. Part 404, Subpt. P, App. 1.

[2] If a claimant is found to have an impairment which meets or equals one of the listed impairments, a conclusive presumption of disability applies and the claimant is entitled to benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990) (citing *Williams v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *Key v. Heckler*, 754 F.2d 1545, 1548) (9th Cir. 1985.

[3] At this stage of the analysis, the ALJ should consider the demands of the claimant's past work as compared with his or her present capacity. *Villa v. Heckler*, 797 F.2d 794, 797 (9th Cir. 1986) (citations omitted); 20 C.F.R. § 416.945(a).

5

past work, determination of whether the claimant can engage in other types of substantial gainful work that exist in the national economy;[4] if the claimant can, the claimant is not disabled and the analysis ends.

The claimant establishes a prima facie case of disability by showing that a physical or mental impairment prevents her from engaging in his previous occupation. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).

In this case, claimant convinced the ALJ that she met the criteria in steps one and two of the sequential analysis; that she has not engaged in substantial gainful employment and that she has severe impairments of diabetes mellitus, asthma, and post traumatic stress disorder. (AR 19.) Claimant does not dispute that at Step Three, the impairments "do not meet or equal the criteria of any listed impairment." Likewise, it is undisputed that claimant does not retain the residual functional capacity to perform her past relevant work, which is Step Four of the analysis. The ALJ found that claimant had the following residual functional capacity:

> "To frequently lift and carry ten pounds and occasionally 20 pounds, to stand and walk six hours in an eight [h]our work day and to sit about six hours in an eight-hour work day. The claimant can only occasionally climb, stoop and kneel. She must avoid work around smoke, dust and chemical fumes and in temperature extremes. Additionally, the claimant retains the mental residual functional capacity to perform simple, repetitive tasks involving understanding, remembering and carrying out one and two step instructions." (AR 21.)

The disputed issue is Step Five in the analysis: whether the ALJ should have engaged the services of the Vocational Expert to opine whether jobs exist in the national economy considering claimant's non-exertional limitations.

At Step Five, it is the Commissioner's burden to establish that jobs exist in the national economy that the plaintiff can perform. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001); 20 C.F.R. §404.1520(f). The Commissioner may meet this burden in two different ways: (1) the testimony of a vocational expert ("VE"), or (2) by reference to the Medical-Vocational Guidelines at 20 CFR Part 404, subpart P. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).

---

[4] At this stage of the analysis, the ALJ should consider the claimant's residual functional capacity and vocational factors such as age, education and past work experience. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

In 1978, the Secretary of Health and Human Resources promulgated the Medical-Vocational Guidelines (also known as "grids") to improve the efficiency and uniformity of Social Security benefits determination. *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988). The grids take account of various vocational factors, such as age, education and work experience, and the claimant's residual functional capacity. 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1985). "Residual functional capacity" is the phrase used by the Commissioner to denote a claimant's ability to perform work-related tasks despite his physical or mental impairments. 20 C.F.R. §§ 404.1545(a) and 416.945(a).

The grids relieve the SSA of the need to rely on vocational expert testimony in cases where the underlying findings of fact correspond precisely to the criteria of a specific rule in the guidelines. *Heckler v. Campbell*, 461 U.S. 458, 462, 103 S.Ct. 1952 (1983). Where a claimant's qualifications correspond to the job requirements identified by a rule, the grids direct a conclusion as to whether work exists that the claimant could perform. *Id.* If the grids fail to accurately describe a claimant's limitations, an ALJ may not rely on the grids alone to show the availability of jobs for the claimant and must hear testimony of a vocational expert. *Reddick v. Charter*, 157 F.3d 715, 729 (9th Cir. 1998). The ALJ may apply the grids in lieu of taking testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations. *Id.*

Vocational evidence is provided by a person who, through training and experience in vocational counseling or placement, has an up-to-date knowledge of job requirements, occupational characteristics, and working conditions, as well as a familiarity with the personal attributes and skills necessary to function in various jobs. *Wilson v. Califano*, 617 F.2d 1050 (4th Cir. 1980).

Claimant argues that her qualifications do not fall squarely within the grids because the ALJ found she was limited to simple one and two-step instructions (AR 21), which does not correlate with ability to perform the full range of unskilled, light work.

Where a claimant has a nonexertional impairment in addition to an exertional limit, the grids may not accurately reflect the availability of jobs such a claimant could perform. *Ortiz v. Secretary of Health and Human Res.,* 890 F.2d 520, 524 (1st Cir. 1989); *Gagnon* v. *Secretary of Health and Human Services,* 666 F.2d 662, 665 n.6 (1st Cir. 1981). Examples of non-exertional limitations are mental,

sensory, postural, manipulative, or environmental (e.g. inability to tolerate dust or fumes) limitations. *Desrosiers.* 846 F.2d at 579. The decision to rely on the grid in this situation depends upon whether claimant's mental impairment "significantly affects [her] ability to perform the full range of jobs." *See Lugo* v. *Secretary of Health and Human Services,* 794 F.2d 14, 17 (1st Cir. 1986) (per curiam).

Claimant argues that because the ALJ found her limited to one- and two- step instructions, she is not able to full the full range of light work and the grids are inapplicable. The Commissioner argues that vocational testimony is unnecessary because unskilled work is defined by the Regulations as "simple" work. 20 CFR §§404.1568, 416.968. In her reply, claimant argues she has further non-exertional limitations of environmental limitations which should also be presented to a vocational expert for consideration.

Here, the ALJ specifically found that claimant had the "mental residual functional capacity to perform simple, repetitive tasks involving understanding, remembering and carrying out one and two step instructions." (AR 21.)

The *Dictionary of Occupational Titles* ("DOT") is "the Secretary's primary source of reliable job information."[5] *See Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir.1990); *cf.*, 20 C.F.R. §404.1566(d)(1). One purpose of the DOT is to classify identified job titles by their exertional and skill requirements. *Terry*, 903 F.2d at 1276; 20 CFR §404.1569. The grids provide rules using the DOT information reflecting major functional and vocational patterns. 20 CFR §404.1569. For each job described,[6] the *Dictionary of Occupational Titles* specifies the type of reasoning capabilities the job

---

[5] The Occupational Information Network (O*NET), which defines and describes occupations, is an electronic successor to the DOT. The current O*NET database of occupational information is based largely on data supplied by occupational analysts using sources such as the DOT. See the U.S. Dep't of Labor website, http://www.bls.gov/emp/empocc1.htm. O*NET descriptors include: skills, abilities, knowledge, tasks, work activities, work context, experience levels required, job interests, and work values/needs. Basic skills measured by O*Net are active learning and listening, critical thinking, learning strategies, mathematics, monitoring, reading comprehension, science, speaking, and writing. However,, the organization of the data in the prototype version of O*NET does not parallel SSA's disability determination process, as does the DOT. See Charles T. Hall , Social Security Disability Practice, Ch. 3, Cross-examining Vocational Experts- the Dictionary of Occupational Titles, § 3:30 (2004).

[6] "The existence of jobs in the national economy is reflected in the 'Decisions' shown in the rules; i.e., in promulgating the Rules, administrative notice has been taken of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels (sedentary, light, medium, heavy and very heavy) as supported by the "Dictionary of Occupational Titles . . ."*See* 20 C.F.R. pt. 404, subpt. P, Appendix 2, §200.00(b).

requires. 2 U.S. Dep't of Labor, *Dictionary of Occupational Titles,* p. 1010-11 (4th ed.1991). Unskilled work requires no skills at all and involves only simple duties. 20 C.F.R. §404.1568 (a). A level one reasoning for unskilled work requires the application of "commonsense understanding to carry out simple one- or two-step instructions." *Dictionary of Occupational Titles*, p.1011("Apply commonsense understanding to carry out simple one- or two-step instructions.") Level two reasoning for unskilled work requires the application of "commonsense understanding to carry out detailed but uninvolved written or oral instructions." *Dictionary of Occupational Titles*, p. 1011. Many of the jobs listed require level two reasoning or higher in the unskilled job category. *See e.g.*, *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997) (A vocational expert is required to consider borderline intellectual functioning condition, along with the claimant's other impairments, to determine how the condition impacts upon the claimant's residual functional capacity, even though the claimant's borderline intellectual functioning may not rise to the level of a disability by itself.) Thus, unskilled jobs have a reasoning level in excess of the limited "simple, repetitive tasks involving one or two step instructions." Defendant argues that *Lucy v. Chater* is inapplicable because it is inconsistent with the regulations which provide that "unskilled" jobs need "little or no judgment to do simple duties that can be learned on the job." 20 CFR §§404.1568(a), 416.968(a).

In *Holohan v. Massanari,* 246 F.3d 1195, 1208 (9th Cir. 2001), the Ninth Circuit found the ALJ erred by relying solely on the grids when the claimant presented with severe psychiatric impairments. The functional limitations caused by anxiety, depression, concentration, and memory impairments are nonexertional limitations. *Id.* These were the kind of impairments at issue in *Holohan.* The court noted, "Indeed, the ALJ found that Holohan had no severe physical impairments and that her only severe impairments were psychiatric. By relying entirely on the grids to determine that there was work that Holohan was capable of performing with her limitations, the ALJ committed clear legal error." *Id.* at 1208-1209 (citations omitted).

Here, the ALJ determined claimant had the capacity to perform the full range of light work despite the impact of her limited reasoning ability. Claimant has mental restrictions which do not correspond her qualifications precisely to the job requirements identified by the grids. The ALJ's findings fail to show that claimant can perform the mental demands of the full range of light work.

9

1  Therefore, the ALJ should have employed a vocational expert to opine as to whether available jobs exist
2  in the national economy, considering claimant's reasoning restrictions. Thus, the ALJ inappropriately
3  determined that claimant could perform the full range of light work without consulting a vocational
4  expert.

5  Claimant argues that the ALJ must also additionally consider claimant's environmental
6  limitations articulated in the residual functional capacity assessment: only occasionally, climb, stoop and
7  kneel; avoid smoke, dust and chemical fumes, and avoid extreme temperatures. (Reply brief, p. 2:20-14.)

8  In light of the remand of this case, it is unnecessary for the Court to resolve these issues. In this
9  regard, the Court remands the case with the understanding that the Commissioner is to reassess these
10 issues on remand should further proceedings render such assessment appropriate. *Tonapetyan v. Halter*,
11 242 F.3d 1144, 1148 (9th Cir. 2001) (upon remand, ALJ to reconsider issue as appropriate to address
12 purpose of remand).

### **CONCLUSION**

14 The decision of the ALJ is therefore REVERSED and the case remanded to the Commissioner,
15 pursuant to 42 U.S.C. §404(g). The case is REMANDED for further administrative proceedings
16 consistent with the Court's decision.

17 IT IS SO ORDERED.

18 **Dated:    April 27, 2005**              /s/ Lawrence J. O'Neill
   b9ed48                                    UNITED STATES MAGISTRATE JUDGE